THOMAS H. MALONEY & SONS, INC., APPELLANT, *v.* E. W. SCRIPPS COMPANY ET AL., APPELLEES.

(No. 33179—Decided October 24, 1974.)

*Mr. William H. Huber,* for appellant.
*Mr. Russell E. Leasure,* for appellees.

JACKSON, J. This is an appeal from an order of the Common Pleas Court sustaining defendant's motion for summary judgment.

In 1969 plaintiff, Thomas H. Maloney & Sons, Inc., was hired to demolish a building. Through some mistake the plaintiff demolished not only the designated building but also a contiguous structure. The owner of this second building filed an action against Thomas H. Maloney & Sons, Inc. In March, 1970, the court granted partial summary judgment for the owner of the building on the issue of liability only. No determination of the amount of damages was made at this time.

On Friday, March 13, 1970, defendant published the following account of this judicial proceeding in the final edition of its newspaper, The Cleveland Press:

"Friday, The 13th Wasn't Their Day

"Wrong Building Wrecked—$15,000

"Common Pleas Judge August Pryatel ruled today that the Thomas H. Maloney & Sons Wrecking Co., 16891 Brookpark Rd., must pay United Garage and Service Corp. $15,948.72 for a building wreckers demolished last Mar. 25.

"They demolished the building, a repair station for taxicabs, by mistake.

"The station, at 17202 Lorain Ave., was next to a building the wreckers were hired to demolish. Having demolished the right building, Maloney & Sons then tore down the wrong one.

" 'Well, somebody, I don't remember who, said we should knock both buildings down,' Thomas Maloney told the Judge. 'I guess we got carried away.' "

The newspaper article was inaccurate in the following respects:

(1) The article stated that $15,948 damages were awarded when, in fact, there was no decision on damages.

(2) The name of the plaintiff was reported as Thomas H. Maloney & Sons *Wrecking Co.*, but plaintiff's name is simply, Thomas H. Maloney & Sons, Inc.

(3) The article stated that the building demolished was a repair station for taxicabs when, in fact, it was a service station.

(4) The story quoted Thomas Maloney as telling the judge, "I guess we got carried away," when, in fact, Thomas Maloney had been retired for several years, and the business is run by his son, Timothy Maloney. The evidentiary material before the trial court failed to establish that either Thomas Maloney, Timothy Maloney or anyone else had made such a statement.

Plaintiff filed this suit alleging that the contents of the newspaper article were false and defamatory in that it held the plaintiff company up to public ridicule and injured the company in its business.

Summary judgment was granted for the defendant, whereupon plaintiff appealed and assigned one error:

"The trial court erred in granting a Motion for Summary judgment filed on behalf of the Defendant-Appellee."

For the reasons discussed below, we find this assignment of error is well taken.

### I.

In a recent decision, *Gertz* v. *Robert Welch, Inc.* (1974), 418 U. S. 323, 41 L. Ed. 2d 789, the Supreme Court of the United States readjusted the delicate balance between the law of defamation and the freedoms of speech and press protected by the First Amendment. The various pronouncements of the *Gertz* case necessitate that Ohio's present libel law be examined and reshaped to comply with the latest mandates of the United States Supreme Court.

In Ohio, libel is defined as a false and malicious publication made with the intent to injure a person's reputation or expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade or profession. *Becker* v. *Toulmin* (1956), 165 Ohio St. 549; *Cleveland Leader Printing Co.* v. *Nethersole* (1911), 84 Ohio St. 118.

Ohio has heretofore recognized two types of libel, libel *per se,* and libel *per quod.* There are several distinct differences between the two types. *See, e. g. Becker* v. *Toulmin, supra. First,* libel *per se* is libel by the very meaning of the words used; whereas, libel *per quod* depends upon interpretation, inducement or innuendo. Libel *per se* is thus a matter of law, to be determined by the court, whereas libel

*per quod* may be determined by a jury. *Second,* in libel *per se,* general damages are conclusively presumed as a matter of law, and proof of special damages is, therefore, not a prerequisite to judgment. In an action for libel *per quod* general damages are not presumed and the plaintiff has the burden to plead and prove special damages. *Third,* if published words are libelous *per se,* malice of the character necessary to support a judgment is presumed;[1] whereas to make out a prima facie case of libel *per quod,* the plaintiff must allege and prove express malice.

Pursuant to present interpretatioans of Ohio law, a newspaper publication which of itself, reflects upon the character of a person by bringing him into public ridicule, or which affects him injuriously in his trade or profession is libelous *per se. Westropp* v. *E. W. Scripps Co.* (1947), 148 Ohio St. 365; *The Cleveland Leader Printing Co.* v. *Nethersole* (1911), 84 Ohio St. 118.

Therefore, the publication of a false statement ascribing to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade or profession is libelous. *Landrum* v. *Dombey* (1971), 30 Ohio App. 2d 200, 202.

The inaccurate portion of the news article which plaintiff claims to be libelous is the alleged quotation from Thomas Maloney, "I guess we got carried away." This alleged quotation subjects the plaintiff to public ridicule and ascribes characteristics to plaintiff's workers which are incompatible with the demolition trade, *i. e.,* a penchant for destruction which prevents them from stopping when the assigned demolition job has been completed. Were it not therefore, for the recently released *Gertz* decision by the United States Supreme Court, we would hold that the false quotation is libelous *per se.*

---

[1]Such malice has been termed "express malice" and consists of an express design to injure, based upon ill will, hatred, revenge or reckless disregard of the rights of another. 34 Ohio Jur. 2d Libel and Slander, Sec. 58 *Express and Implied Malice* (1958). Express malice is to be distinguished from actual malice, defined by the U. S. Supreme Court to mean knowledge of falsity or reckless disregard of the truth.

However, in *Gertz,* the Supreme Court has apparently ". . . federalized major aspects of libel law by declaring unconstitutional in important respects the prevailing defamation law in all or most of the 50 states." [2]

Revelation of the full impact of the *Gertz* decision on Ohio libel law necessarily awaits possible future court interpretations and legislative enactments. [3] One clear result of the *Gertz* decision is that a plaintiff may no longer rely upon the doctrine of libel *per se,* as it was heretofore recognized in Ohio, to form the basis of a libel suit. This result is mandated by the holding of the *Gertz* case enunciated in the following two quotes:

(1) "[W]e hold that the states may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Gertz, supra,* at 810.

(2) "We hold that, so long as they do not impose liability without fault, the states may define for themselves the appropriate standards of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Gertz, supra,* at 809. [4]

Prior to the two pronouncements quoted above, a private individual could make out a prima facie case of libel *per se* by showing that the defendant published a false statement concerning the plaintiff, and that the false statement was defamatory on its face. General damages were presumed, as was the malice of the publisher. The publisher's belief in the truth of the false publication, even if based on probable cause was not a defense, although such belief could be considered to mitigate damages. *Wilson* v. *Ap-*

---

[2] *Gertz* v. *Robert Welch, Inc.* (1974), 418 U. S. 323, 41 L. Ed. 2d 789 (Dissenting Opinion of Mr. Justice White).

[3] See the dissenting opinion of Mr. Justice White for a thorough discussion of the impact of the *Gertz* case upon state defamation laws.

[4] The majority opinion written by Mr. Justice Powell merely forbids the imposition of "liability without fault," leaving definition of that term to the state courts. The concurring opinion of Mr. Justice Blackmun, however states, ". . . The court now conditions a libel action by private persons upon a showing of negligence, . . ." *Gertz, supra,* at 813.

*ple* (1827), 3 Ohio 270. The degree of care exercised by the publisher to ascertain the truth of the defamatory statement was irrelevant.

Therefore, libel *per se* is a doctrine which permits a finding of liability without proof of fault in the sense that malice is presumed and belief in the truth of the published statement, even if based upon reasonable diligence to ascertain such truth, is not a defense.

The *Gertz* decision specifically prohibits the imposition of liability without fault in defamation cases.

We, therefore, hold that a private individual bringing a libel suit based upon a publication which is defamatory on its face must prove not only the publication of such statement but also actual injury,[5] and fault on the part of the publisher. Such fault may consist of either negligent failure to exercise due care, or a greater degree of fault such as express or actual malice.[6]

## II.

Having reviewed the general legal principles announced in the *Gertz* decision, and some of their implications and effects upon the law of libel in Ohio, we turn now to application of these principles to the facts and evidence of the case at bar.

Initially, we must reject the defendant-appellee's contention that the substance of the published article is true, and that any untrue words contained therein are not defamatory. The gist or the sting of the article was the admittedly false quote attributed to Thomas Maloney that "I guess we got carried away," which followed his alleged statement to the judge that "Well, somebody, I don't remember who, said we should knock both buildings down." This statement is defamatory because of the adverse effect it would tend to have on the plaintiff in his trade or profes-

---

[5] Actual injury is not limited to out of pocket expenses, but may include customary types of actual harm inflicted by defamatory falsehood such as impairment of reputation, personal humiliation, mental anguish and suffering. *Gertz, supra,* at 811.

[6] See Note 1, *supra,* for a discussion of the difference between express malice and actual malice. . . .

sion. *See, Goudy* v. *Dayton Newspapers, Inc.* (1967), 14 Ohio App. 2d 207.

Defendant's contention that the publication is protected by the so called "Times Rule" is also rejected. In *New York Times* v. *Sullivan* (1964), 376 U. S. 254, the Supreme Court announced what has become known as the "Times Rule," which is stated at p. 279 of the opinion as follows:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

This requirement of a finding of "actual malice" was later extended to suits by public figures in *Associated Press* v. *Walker* (1967), 388 U. S. 130, and further extended to suits by private individuals involving matters of public or general interest in *Rosenbloom* v. *Metromedia, Inc.* (1971), 403 U. S. 29.

The Rosenbloom extension of the "Times Rule" to private persons has been eradicated by the *Gertz* decision. Litigation involving private individuals who seek damages for publication of a defamatory falsehood are now governed by the principles announced in *Gertz,* and discussed above.

Summary judgment may be granted only when the evidence properly considered discloses no genuine issue as to a material fact, and the movant is entitled to judgment as a matter of law. The record before us contains evidence which, when properly considered under Civil Rule 56(C), reveals that issues of fact made material by the *Gertz* decision are genuinely disputed by the parties. The decision of the lower court granting summary judgment for the defendant is consequently erroneous, and must be reversed.

Finding that the false quotation is defamatory on its face, we remand to the trial court for a determination of the material issues of fact, to-wit: (1) Was the article published with actual malice? If this finding is made,

general damages may be presumed, and the plaintiff may be entitled to punitive damages;[7] (2) If the article is found to have not been published with actual malice, was the defendant guilty of some other degree of fault, whether negligence or express malice; (3) If it is found that the defendant was guilty of negligence or express malice, but not actual malice, the plaintiff is entitled to prove his actual damages.

Accordingly, the judgment of the trial court is reversed and remanded for further proceedings consistent with this decision.

KRENZLER, P. J., concurs.
MANOS, J., dissents.

KRENZLER, J., concurring. I concur in the judgment of reversal with the following additional comments.

In this case we are dealing with libel, one of the oldest common law actions. Libel is defined as a false and malicious publication, either in print or writing or by pictures, published with the intent to injure a person's reputation, or to expose such a person to public hatred, contempt, ridicule, shame, or disgrace, or to affect him injuriously in his trade, business, or profession. See *Becker* v. *Toulmin* (1956), 165 Ohio St. 549; *Cleveland Leader Printing Co.* v. *Nethersole* (1911), 84 Ohio St. 118; *State* v. *Smily* (1881), 37 Ohio St. 30.

Libel exists in two forms. Libel *per se* is libel by the very meaning of the words used. It is libel as a matter of law. In a case of libel *per se,* a cause of action is stated, and recovery of general damages may be had without pleading or proving such damage because general damages will be conclusively presumed. However, in order to recover special damages, they must be pleaded and proved.

Libel *per quod* is libel by interpretation, through inducement or innuendo, between an innocent or harmless

---

[7] Plaintiff alleges that the article was printed with knowledge that it was false. Defendant denies this claim.

meaning and a defamatory one. The publication, on its face not libelous, becomes so by the use of an innuendo rendering the apparently harmless words into libelous ones by extrinsic evidence. In such a case the plaintiff may not recover damages without pleading and proving special damages.

Many years after the law of libel was firmly established the U. S. Constitution was adopted with its First Amendment right to free speech. For a long period of time there was no discernible conflict between the two. Libel was part of that well defined and narrowly limited class of speech, the prevention and punishment of which was never thought to raise any constitutional problem. *Chaplinsky* v. *New Hampshire* (1942), 315 U. S. 568, 86 L. Ed. 1031.

In 1964 the United States Supreme Court decided *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254, 11 L. Ed. 2d 686, which dealt with the alleged libel of a public official. *Sullivan* established the predominace of the First Amendment over the right of a public official to recover in a libel action. In *Sullivan* the Supreme Court stated that there is a national commitment to the principal that debate on public issues should be uninhibited, robust and wide open, and that it may well include vehement, caustic and sometimes unpleasant attacks on government and public officials. Further, erroneous statements are inevitable in free debate and must be protected if the freedoms of expression are to have the breathing space that they need to survive. The Supreme Court said that a rule compelling the critic of official conduct to guarantee the truth of his factual assertions, and to do so on pain of libel judgments virtually unlimited in amount leads to intolerable "self censorship," and would be a limitation on the right of free speech. The constitutional guarantees require that a public official be prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice," that is, with knowledge that it was false or with reckless disregard of whether it was true or not.

Three years after *Sullivan* a majority of the Court

agreed to extend the constitutional privilege to defamatory criticism of "public figures." *Curtis Publishing Co.* v. *Butts* and its companion *Associated Press* v. *Walker* (1967), 388 U. S. 130, 18 L. Ed. 2d 1094, reh. den. 389 U. S. 889, 19 L. Ed. 2d 197, 198.

The next case of importance was *Rosenbloom* v. *Metro Media, Inc.* (1971), 403 U. S. 29, 29 L. Ed. 2d 296. In this case there was not a clear majority but there was a plurality which in effect held that the New York Times standard would apply to private individuals where the allegedly libelous conduct involved a public issue.

The most recent case involving libel is *Gertz* v. *Robert Welch, Inc.* (1974), 418 U. S. 323, 41 L. Ed. 2d 789, decided on June 25, 1974, in which the Supreme Court was faced with a libel action involving a private citizen and a non-public issue.

In affirming its position taken in *Sullivan* the Court commented that the First Amendment requires that we protect some falsehood in order to protect speech that matters, but in *Gertz* they also recognized the legitimate state interest underlying the law of libel which is the compensation of individuals for the harm inflicted upon them by defamatory falsehood. The Court acknowledged that some tension necessarily exists between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury. *Gertz* was an attempt to make some accommodation between the needs of a free press and the states' interest in protecting private individuals, as contrasted with public persons, from the harm of defamatory falsehoods.

The Supreme Court took the position that private individuals are more vulnerable to injury than public persons, and that therefore the states' interest in protecting them is correspondingly greater. The Court concluded that a public person's access to the media enables him to better defend himself against this type of attack. Further, the Court stated that public persons have voluntarily exposed themselves to the increased risk of injury from defamatory falsehoods by virtue of their chosen position in society.

For these reasons the Supreme Court established a contitutional distinction between public and private defamation plaintiffs.

In *Gertz* the Court fashioned the new rules to govern libel actions concerning private individuals. It declined to apply the New York Times standard and eliminated libel *per se* and presumed damages by holding that liability without fault in a libel action was no longer constitutionally permissible.

The Supreme Court said that the states' interest in compensating injury to the reputation of private individuals is greater than for public officials and public figures. So long as a state does not impose liability without fault, it may define for itself the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood which injures a private individual and which in substance makes substantial danger to reputation apparent. A private defamation plaintiff who establishes liability may recover compensation for actual injury but may not recover for punitive damage when such recovery is not based on knowledge of falsity or reckless disregard for the truth. The Supreme Court did not define actual injury but stated that trial courts have wide experience in framing appropriate jury instructions in tort actions. The court further said that actual injury is not limited to out-of-pocket loss and the more customary types of actual harm inflicted by defamatory falsehood includes impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering. Jury awards must be supported by competent evidence concerning the injury and the jury's discretion over awards is limited only by the rule that they not be excessive.

In other words, the Supreme Court said that a negligence standard would now be applied in private defamation actions, and a private defamation plaintiff who establishes liability and damage by a preponderance of the evidence may recover such damages as are sufficient to compensate him for actual injury. A plaintiff may recover puni-

tive damages if he can prove that the article was published with knowledge of its falsity or a reckless disregard for the truth.[8]

In deciding *Gertz* the United States Supreme Court was faced with three alternatives:

1. Treat private citizen plaintiffs the same as public officials and apply the New York Times standard which requires the plaintiff to prove publication of defamatory falsehood ''with actual malice—that is, in the knowledge that it was false or with reckless disregard for whether it was true or not,'' or;

2. Treat public officials differently than private citizens by applying the New York Times standard to public officials and by permitting to stand the old common law rule of libel *per se* as applied to private citizens, or;

3. Treat public officials and private citizens differently by applying the New York Times standard to public officials and eliminate and declare libel *per se* and presumed damages unconstitutional and adopt a new rule for private citizens requiring them to allege and prove a libelous writing, negligent publication and actual damages.

While the Supreme Court did not apply the New York Times standard to private individuals it declared libel *per se* unconstitutional because it permitted liability without fault and the Court then fashioned the aforementioned new rule for private libel plaintiffs.

Writing for the Court, Mr. Justice Powell stated that the Constitution does not require the drawing of a thin line between the drastic alternatives of the New York Times privilege and the common law of strict liability for defamatory error. With this in mind they sought a middle ground by not placing the heavy burden of the New York Times standard upon the back of the private defamation plaintiff, but they did strip him of his most useful legal tool—libel *per se*. Where before *Gertz* he need not have proved anything beyond the existence of a statement libelous on its face in order to recover, he now must bear the same burden borne by all other plaintiffs in a negligence action.

---

[8]The New York Times standard.

The United States Supreme Court in *Gertz* cautioned that States may enact libel legislation as long as such legislation does not impose liability without fault. Inasmuch as *Gertz* was decided by the United States Supreme Court and Ohio does not as yet have legislation implementing *Gertz*,[9] trial courts in Ohio must try libel actions brought by private individuals by the standards pronounced in *Gertz*. This means that a plaintiff must allege and prove by a preponderance of the evidence a false and libelous writing, negligence by the defendant, and damages. If a plaintiff wishes to recover special damages he must allege and prove them. If a plaintiff in a libel action wants to recover punitive damages he must allege and prove that the defendant had knowledge of the falsity or that he showed a reckless disregard for the truth.

In the present case, the plaintiff alleged that he was libeled and defendant denied liability. Depositions were taken; affidavits submitted. The defendant filed a motion for summary judgment contending that there was no material issue of fact and that it was entitled to judgment as a matter of law. The trial court granted the summary judgment.

We have reviewed all of the material submitted to the Court, and in view of the recent rulings by the United States Supreme Court in *Gertz*, a summary judgment was not appropriate. *Gertz* requires that the plaintiff in this case should have his day in court; being a private citizen he should have the opportunity to prove by a preponderance of the evidence that there was a libelous article written about him and published, that the article was false and that the defendant was negligent in the printing of the article, and that the plaintiff was damaged. He must show actual injury. If he seeks special damages he must allege and prove them. If he seeks punitive damages he must show that the defendant acted with knowledge of falsity or with reckless disregard for the truth.

[9]Chap. 2739 of the Revised Code deals with libel and slander, but its provisions are not applicable to the holding in *Gertz*.

Under the *Gertz* standard the trial court erred in granting the defendant summary judgment because there are material issues of fact and the defendant was not entitled to judgment as a matter of law.

I concur in the judgment of reversal.

MANOS, J., dissenting. The article in question accurately stated that the plaintiff mistakenly leveled a building without authority to do so. Such an honest mistake does not reflect upon the plaintiff's business reputation. If, for example, the newspaper had reported that the plaintiff demolished the structure *knowing* that it had no authority, an action in libel would lie. However, the story in question alleged no such intentional misconduct, but only simple negligence. That the plaintiff made one honest mistake should not adversely affect his general business reputation.

Moreover, the article is essentially correct.

"[I]t is now generally agreed that it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true, or, as it is often put, to justify the 'gist,' the 'sting,' or the 'substantial truth' of the defamation." Prosser, *Law of Torts* 789 (4th Ed. 1971).

If the story does contain a "sting," it is not the quote attributed to Mr. Maloney, but rather that the plaintiff demolished a building without the owner's permission. The story was therefore substantially true.

I conclude that: (1) The article did not adversely reflect upon the plaintiff's business reputation; (2) Assuming *arguendo* that the plaintiff's reputation was injured, this injury resulted from that portion of the article which was admittedly true. I must therefore respectfully dissent.