**ROGERS et al., Appellants,**

v.

**BUCKEL et al., Appellees.**

[Cite as *Rogers v. Buckel* (1992), 83 Ohio App.3d 653.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61175.

Decided Nov. 16, 1992.

*Roy M. Kaufman,* for appellants.

*F. Wilson Chockley* and *Kenneth A. Zirm,* for appellees.

PARRINO, Judge.

Plaintiff-appellant Kim Rogers ("appellant"), individually and as mother and next best friend of her three children, Tiante Rogers, Ciera Rogers and Mercedes Barhams (collectively "appellants") appeal from the adverse ruling below which granted summary judgment in favor of David Buckel and Gillett Communications of Ohio, Inc., licensee of the television station WJW–TV8 ("TV–8"). Appellant sued Buckel, a TV–8 reporter and anchor, and TV–8 for allegedly violating their right to privacy and for libel.

The circumstances giving rise to this appeal are as follows: Buckel, in the late summer or early autumn, was contacted by Charles Ohlander, the Agent–in–Charge of the Drug Enforcement Agency ("DEA") office in Cleveland, whom Buckel had worked with before. Ohlander inquired as to whether Buckel would be interested in doing a story on the DEA and its involvement in the so-called "war on drugs." Buckel, after speaking with the assistant news director, agreed to do the story.

Thereafter, he and the TV–8 videographer, Bill Wolfe, were sent to the DEA training academy in Virginia to film the training sessions of DEA agents.

Upon returning to Cleveland, Buckel expressed his desire to film an actual drug raid in Cleveland in order to demonstrate the DEA's local presence in combatting drug problems.

Thereafter, another TV–8 videographer, Herb Thomas, and Buckel accompanied DEA agents on a drug raid in Cleveland on November 9, 1989. Appellant was present at the apartment of this drug raid, as were her children. She went to the apartment to pick up her children where they were being babysat when the raid occurred. According to her affidavit, she specifically requested Buckel and Thomas not to film her or her children, although this fact is disputed by Thomas. Video from this raid was taken and aired the same night on the 11:00 p.m. news. However, appellant and her children were excluded from the segment that night. The footage that was shot during the raid was part of a report prepared by Buckel entitled "DEA, From the Inside," which special report aired on November

16, 1989. The report was part of an on-going series entitled "Still a Crisis of Substance." Appellant and her children also did not appear in the November 16, 1989 report about the DEA which was prepared by Buckel.

Appellant challenges not the report prepared by co-defendant Buckel but the appearance of her and her children, which footage was part of a separate report prepared by another TV–8 reporter, Mike Conway. Conway conceived the idea to do a special report on the victims of the drug epidemic, children. After receiving approval for his story, Conway requested that all TV–8 videographers save any videotape they shot or might shoot of children at drug raids. Thomas responded to Conway's request and gave him the footage filmed at the drug raid on November 9, 1989, where a number of children, including appellant's, were found in one of the apartments targeted for the drug raid.

Conway then selected the video and researched the identities of those persons whom he was going to highlight. He investigated those who were actually charged with drug-related crimes and those who were not charged. Conway was aware that appellant was not charged, according to his own affidavit. He also determined the actual tenant of the apartment, Fenise Shepard. A report entitled "The Silent Victims" featured a "montage of illustrations of how children, both in Cleveland and nationally, are being torn from their families and otherwise victimized by their parents' problems with drugs." (Conway's affidavit at page 3, paragraph 7.) This report was aired on November 20, 1989. Footage of the November 9, 1989 drug raid was included by Conway in his report. A brief but dramatic clip of appellant, with her head down, huddled over her children during the drug raid was part of the report. Although they were not identified by name, the voice-over which was simultaneous to appellants' appearance was as follows:

"Last week, police raid a Warrensville Heights apartment. Four children are found. The mother is charged with allowing crack dealers to cook and sell in the apartment. The silent victims are everywhere, children caught in a parental crack trap."

A segment of the story explicated the street term "strawberry mother," a mother who prostitutes for drugs, and focused on the effect these mothers have on children. Nowhere during the broadcast did the voice-over reveal that appellant was not a strawberry mother; that she was not charged with any crime; that her presence at the scene of the drug raid was merely happenstance; and that she had never done drugs or sold drugs or ever traded sex for drugs.

Appellant, thereafter, brought defamation and invasion of privacy claims against Buckel and TV–8. Buckel and TV–8 filed a motion for summary judgment with supporting affidavits and the videotape of Conway's report, "The Silent Victims." Appellant countered with a brief in opposition with attached affidavits of friends and relatives who watched Conway's report, recognized

appellants and thought appellant was represented as a "strawberry mother." According to appellant's evidence, out of shame and humiliation, she was afraid to go out of her house for fear of being noticed and dyed her hair a different color in order to disguise herself.

The trial court, with opinion, granted the motion for summary judgment. Appellant's timely appeal challenges the lower court's ruling. We disagree with the trial court and find that appellant's assignment of error has merit.

I

Appellant argues the trial court erred in granting defendants' motion for summary judgment. Specifically, appellant contends Buckel and TV–8 should be held liable for defaming appellant by showing her as a "strawberry mother" and her "children as children of a criminal and prostitute."

■ The evidence establishes a genuine issue of material fact that TV–8, not Buckel, aired a segment of a videotape which may reasonably have created a false impression in a part of the audience that appellant was a strawberry mother or was somehow otherwise involved in the drug culture.

■ Interestingly, Buckel was sued for defamation and invasion of privacy but had nothing to do with the report in which appellant and her children appear. Thomas shot the footage and later gave it to Conway. Conway, in turn, was the reporter responsible for the film which is the subject of this lawsuit. In fact, counsel for appellant during oral argument conceded that Buckel should not be a party to the instant lawsuit and further asserted that Buckel should not be held liable. We agree.

Mike Conway's affidavit supports Buckel's absence of involvement:

"I selected all the video and wrote all the narration for the report, which I entitled 'The Silent Victims'. The story was over eight minutes long and features a montage of illustrations of how children, both in Cleveland and nationally, are being torn from their families and otherwise victimized by their parents' problems with drugs: It features video shot by TV–8 videographers locally, as well as video obtained from television stations in Detroit and Washington, D.C. Also included are interviews with members of the Cleveland Police Department and local social service agency administrators. The portion of the report regarding the drug raid at the Banbury Court Apartments is approximately twenty seconds in length."

Herb Thomas' affidavit also supports Buckel's non-involvement:

" * * * TV–8 reporter Mike Conway had informed me that he was looking for videotape of children involved at the scene of a drug raid or arrest for a story he

was doing, so I told him that there had been children at this November 9 drug raid and gave him the field tape from the raid."

Hence, Buckel is not a party to this lawsuit and we affirm summary judgment in his favor.

## II

Civ.R. 56(C) prescribes the materials to be considered by the trial court in ruling upon a motion for summary judgment. The pertinent part of the rule states:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, *timely filed in the action,* show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *No evidence or stipulation may be considered except as stated in this rule.* * * * " (Emphasis added.)

The Ohio Supreme Court, in *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, defined the "right of privacy" and enumerated the prima facie elements of an actionable invasion of privacy:

■ "The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned." *Id.* at paragraph one of the syllabus.

■ "An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, *or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.*" (Emphasis added.) *Id.* at paragraph two of the syllabus.

■ The evidence in this case does indeed create a genuine issue of material fact with respect to proof of a claim for invasion of privacy.

Appellant alleged that TV–8 wrongfully intruded into her private affairs in such a manner as to cause humiliation. She maintains that this wrongful intrusion was the filming of her and her children without her consent in another's apartment where such apartment was the target of a drug raid. Appellant avers that, by mere happenstance, she was picking up her children at the babysitter's and had nothing to do with the illegal activities that prompted the drug raid; yet, she was portrayed as a participant of some sort.

## III

Appellant also alleges that TV–8 defamed her by the portrayal of her as a "strawberry mother" and that her children are those of a criminal and prostitute.

■ "Defamation is a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business. *Cleveland Leader Printing Co. v. Nethersole* (1911), 84 Ohio St. 118 [95 N.E. 735]; *Newbaugh v. Curry* (1831), Wright 47." *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 145, 486 N.E.2d 1220, 1222.

■ Libel is a false and malicious publication made with the intent to injure a person's reputation or expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade or profession. See *Becker v. Toulmin* (1956), 165 Ohio St. 549, 60 O.O. 502, 138 N.E.2d 391; *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.* (1974), 43 Ohio App.2d 105, 72 O.O.2d 313, 334 N.E.2d 494. To establish a claim of libel, the plaintiff must prove: (a) the statement false; (b) the statement defamatory towards the plaintiff; (c) publication of the statement; (d) injury resulting therefrom; and (e) fault by the publisher. *Maloney, supra; Hersch v. E.W. Scripps Co.* (1981), 3 Ohio App.3d 367, 374, 3 OBR 430, 437, 445 N.E.2d 670, 678. Ohio law provides that in cases involving defamation of private persons, where a prima facie showing of defamation is made by the plaintiff, the question which a jury must determine by a preponderance of evidence is whether the defendant acted reasonably in attempting to discover the truth or falsity or defamatory character of the publication. *Embers Supper Club, Inc. v. Scripps–Howard Broadcasting Co.* (1984), 9 Ohio St.3d 22, 9 OBR 115, 457 N.E.2d 1164, syllabus, certiorari denied (1984), 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 875.

■ A review of the videotape reveals that a genuine issue of material fact exists on the question of falsity. As previously noted in this opinion, the statement made during appellants' appearance was as follows:

"Last week, police raid a Warrensville Heights apartment. *Four children are found. The mother is charged with allowing crack dealers to cook and sell in the apartment.* The silent victims are everywhere, children caught in a parental crack trap." (Emphasis added.)

The only reasonable interpretation of the visual and the simultaneous voice-over is that the raid took place in appellant's apartment and the children which surrounded appellant as she huddled over them were indeed the "silent victims" of which the film was about. In fact, the mother in whose apartment appellant's children were being babysat was charged with allowing crack dealers to cook and

sell crack cocaine in her apartment, not appellant. Appellant's introduction of five affidavits of persons who saw the broadcast and thought she was a "strawberry," in addition to the actual videotape, create genuine issues of material fact regarding appellant's invasion of privacy and defamation claims. It is a jury question whether the evidence establishes, with convincing clarity, proof of appellant's identity as the persons about whom the damaging statements are made.

Having established the presence of genuine issues of material fact, appellant's assignment of error is well taken.

Judgment affirmed in part as to summary judgment in favor of David Buckel and reversed in part as to TV–8 and remanded for proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part.*

SPELLACY, P.J., and HARPER, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.