**Daisy WASHINGTON, Plaintiff,**

v.

**CITY OF CLEVELAND,
et al., Defendants.**

**No. 1:95 CV 1762.**

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 16, 1996.

---

**1304**

Rebecca L. Todt, Daniel T. Todt, Law Offices of Daniel T. Todt & Associates, Cleveland, OH, for plaintiff.

Sharon Sobol Jordon, Joseph J. Jerse, Corinne B. Katz, City of Cleveland, Department of Law, Cleveland, OH, for defendants.

## MEMORANDUM OF OPINION

NUGENT, District Judge.

This case is before the Court upon Defendant's Motion for Summary Judgment (Doc. # 39). Plaintiff has filed her Response to Defendant's Motion (Doc. # 49). On September 4, 1996, this Court held a status conference on Defendant's Motion. Arguments by counsel have been heard and the matter is now fully submitted and ripe for decision by this Court.

## I. FACTS

Plaintiff, Daisy Washington, a black female, was hired as a security officer in the Cleveland Public Utilities Police, Division of Water, on September 28, 1992. Plaintiff's initial term with the Division of Water was a 90–day probationary period. At the time she began her employment, the Chief of Security for the Division of Water was Defendant, Mr. Willie "Bob" Chambers, a white male. Defendant, Mr. Kenneth Haynes, was a Lieutenant in the Division of Water and later promoted to Acting Chief.

Plaintiff alleges that Defendant Chambers has a long standing and on-going pattern of sexual discrimination against Plaintiff. (Compl. ¶ 3, 10). For instance, Plaintiff alleges that Defendant Chambers continuously propositioned her for sex from the outset of her employment with the Department of Water. Specifically, Plaintiff alleges that Defendant Chambers would constantly rub against her and look down her blouse. (Compl. ¶ 7). Plaintiff also alleges that Defendant Chambers made sexual comments and innuendos and constantly inquired about what he per-

ceived as a relationship between Plaintiff and her training officer. (Compl. ¶ 8). In addition to his sexually related comments, Plaintiff alleges that Defendant Chambers made various racial comments regarding black women and interracial relations, in general. (Compl. ¶ 9, 13). At one point, Plaintiff alleges that Defendant stated "since you like white guys, why not try me out." (Compl. ¶ 9).

On January 26, 1993, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her charge, Plaintiff alleged that Defendant Chambers discriminated against her due to her race and sex in violation of Title VII. On April 14, 1993, Plaintiff filed another charge with the EEOC claiming that Defendant Chambers had retaliated against her for filing the January 26, 1993 charge. Plaintiff alleged that this retaliation was in the form of threats as well as assignments given to her for which she was not trained.

Plaintiff's first and second counts dovetail with her third and fourth counts. Plaintiff alleges that she was maliciously prosecuted and slandered because she spurned Defendant Chambers' sexual advances. These counts stem from a criminal action undertaken against Plaintiff as a result of a motor vehicle accident she was involved in while driving a Division of Water Chevrolet Blazer. On October 6, 1994, Plaintiff reported that she had been rear-ended by a hit-skip driver. Upon reviewing the damage to the Blazer, Defendant Lieutenant Haynes determined that the damage was inconsistent with the report filed by Plaintiff. Defendant Haynes consulted with an officer of the Cleveland Police Department's Accident Investigation Unit, Bruce Leaks. After a review of this situation, it was Mr. Leaks opinion that the accident had not occurred as the Plaintiff claimed. Rather, the Defendants believed that the marks were made by backing into a Service Entrance loading dock. Therefore, the Defendants sought criminal charges against Plaintiff for filing a false report.

The matter was referred to a City of Cleveland Prosecutor who in turn referred it for review by the Cuyahoga County Prosecutor's office. The County Prosecutor present-

ed the case to the Cuyahoga County Grand Jury, which returned indictments against the Plaintiff on one felony count each of tampering with evidence and tampering with records. At the conclusion of the State's case against her Cuyahoga County Common Pleas Judge Patricia A. Cleary dismissed the charges finding that there was no evidence submitted to show that the city was actually defrauded by Plaintiff's actions. On December 7, 1994, Plaintiff filed her third and final charge with the EEOC. In this charge, Plaintiff alleged that the criminal investigation into her automobile accident was in retaliation for filing her prior charges.

Plaintiff filed the present action on July 13, 1995 in the Cuyahoga County Court of Common Pleas. On August 10, 1995, the Defendant filed its notice of removal of the action to the United States District Court for the Northern District of Ohio. Plaintiff's Complaint sets forth five counts. This Court dismissed the Fifth count via marginal entry order on May 7, 1996. (*See* Doc. # 6). Therefore, the four remaining counts are as follows: 1) Sexual Harassment in violation of OHIO REV.CODE ANN. § 4112.02; 2) Race and Sex Discrimination in Violation of Title VII; 3) Malicious Prosecution; and 4) Slander Per Se.

Defendant has moved this Court for summary judgment on all of Plaintiff's claims.

## II. SUMMARY JUDGMENT STANDARD

In determining whether summary judgment is to be granted, the court must consider only that evidence which is properly before it. Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citation omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995).

In sum, proper summary judgment analysis entails:

"... the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## III. MALICIOUS PROSECUTION AND SLANDER PER SE

The third and fourth counts for malicious prosecution and slander per se, respectively,

stem from the Plaintiff's indictment on two charges of tampering with evidence and tampering with records. Defendant argues that it is entitled to summary judgment on both of these counts as a matter of law. Defendant claims that the City of Cleveland is immune from the Plaintiff's claims under OHIO REV. CODE ANN. § 2744, which restored governmental immunity to municipal corporations subject to certain exceptions. OHIO REV. CODE ANN. § 2744.02(A)(1) provides, in part as follows:

"* * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

The qualified-immunity provisions of OHIO REV.CODE ANN. § 2744.03(A)(5), as relevant here, shield Defendants from liability under the following conditions:

"The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

The investigation of possible fraud in the filing of Plaintiff's damage report was a police service and an exercise of a governmental function. OHIO REV.CODE ANN. § 2744.01(C)(2)(a) and (i). Therefore, Defendants are immune from suit in the exercise of this function absent evidence that the investigation was undertaken with a malicious purpose or in a wanton or reckless manner.

### A. *Malicious prosecution*

■■■ Malicious prosecution and abuse of process are state torts involving a misuse of the legal process. In *Crawford v. Euclid National Bank*, 19 Ohio St.3d 135, 483 N.E.2d 1168 (1985) the Ohio Supreme Court held that to establish the tort of malicious prosecution, a plaintiff must prove the following elements: 1) the malicious institution of a

prior proceeding against the plaintiff by the defendant; 2) the lack of probable cause for the filing of that prior suit; 3) the termination of that prior proceeding in the plaintiff's favor; 4) the seizure of the plaintiff's person or property during the course of the prior proceeding; and 5) injury or damages suffered by plaintiff as a result. Probable cause exists when a defendant had a reasonable ground of belief, supported by trustworthy information and circumstances known to the defendant which would be sufficiently strong to cause a reasonably careful person, under similar circumstances, to believe that the prior proceedings and method of presenting the action were reasonable and lawful. *Melanowski v. Judy*, 102 Ohio St. 153, 156, 131 N.E. 360 (1921), citing *Ash v. Marlow*, 20 Ohio 119 (1951); see also, *Epling v. Pacific Intermountain Express Co.*, 55 Ohio App.2d 59, 379 N.E.2d 239 (1977). A person has probable cause to believe and act if a reasonable person would have so believed and acted. *Id.*

In the present case, Plaintiff claims that the Defendant's initiation of the investigation into her accident report was a direct result of her spurning Defendant Chambers' sexual advances. However, Plaintiff has presented no evidence to support this allegation. On the contrary, Defendant has presented the affidavit of Lieutenant Haynes and the deposition of Mr. Leaks, the investigator. Both of these men state that the damage was inconsistent with the accident account given by Ms. Washington. Plaintiff has not presented any evidence to refute the opinions set forth in these affidavits. Moreover, the matter was referred to both the City and County prosecutors offices. Only after these offices reviewed the evidence was the matter submitted to the grand jury. Upon completion of the grand jury's investigation, an indictment was returned.

■■■ The return of an indictment by the grand jury is evidence of probable cause; when an indictment has been returned by the grand jury, the plaintiff has the burden of producing substantial evidence to establish lack of probable cause. *Deoma v. Shaker Heights* (1990), 68 Ohio App.3d 72,

587 N.E.2d 425; *Adamson v. The May Co.*, 8 Ohio App.3d 266, 268, 456 N.E.2d 1212 (1982). Plaintiff must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular. *Deoma*, 68 Ohio App.3d at 77, 587 N.E.2d 425. Plaintiff has presented no such evidence. The evidence submitted before this Court shows that the initiation of the prosecution of the Plaintiff resulted from a reasonable belief that she had filed a false accident report. Plaintiff has presented no evidence of malice or ill will on the part of the Defendants. Therefore, summary judgment is GRANTED on Plaintiff's claim for malicious prosecution as the Defendant is entitled to immunity pursuant to OHIO REV.CODE ANN. § 2744.01(C)(2)(a).

### B. *Slander per se*

▬ For the reasons that follow, Plaintiff's claim for slander per se must also fail. Slander per se is slander by the very meaning of the words used. Statements which import an indictable criminal offense involving moral turpitude or infamous punishment, impute a loathsome or contagious disease which excludes one from society or injures one in his trade or occupation are slanderous per se. *McCartney v. Oblates of St. Francis deSales* (1992), 80 Ohio App.3d 345, 353, 609 N.E.2d 216. In the present case, Plaintiff claims injury to her work and reputation as a result of her prosecution. The malice which is presumed in a case of slander per se is "express malice" and "consists of an express design to injure, based upon ill will, hatred, revenge or reckless disregard of the rights of another." *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.* (1974), 43 Ohio App.2d 105, 108, 334 N.E.2d 494.

1. This Court must note, as Defendant states in its' Motion for Summary Judgment, that the Plaintiff's claims of harassment based upon race and sex are less than artfully pled. However, they are pled in a manner sufficient enough to satisfy the liberal pleading requirements of FED. R.CIV.P. 8.

2. Plaintiff's Complaint seeks damages from Defendant Chambers in both his individual and official capacities. (Compl. ¶ 3) This Court has

As previously stated, Plaintiff has presented no evidence to show any malice or ill will in the decision to investigate and prosecute her for the accident report. On the contrary, an impartial body, the grand jury found probable cause existed to indict the Plaintiff. Therefore, summary judgment is GRANTED on Plaintiff's claim for slander per se as Defendants are entitled to immunity pursuant to OHIO REV.CODE ANN. § 2744.01(C)(2)(a).

### IV. RACE AND SEXUAL DISCRIMINATION

Plaintiff's first and second counts set forth allegations of racial and sexual harassment on the part of her supervisor and employer in violation of OHIO REV.CODE ANN. § 4112.02 and Title VII.[1] Under federal law, Title VII of the Civil Rights Act of 1964 forbids discrimination "with respect to compensation, terms, conditions or privileges of employment because of [an] individual's ... race, sex ..." 42 U.S.C. § 2000e–2(a)(1). Plaintiff's Title VII claims are premised upon both *quid pro quo* and hostile environment theories of discrimination.[2] The Supreme Court of Ohio has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, is generally applicable to cases involving alleged violations of OHIO REV.CODE ANN. § 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 421 N.E.2d 128.

### A. *Quid pro quo harassment*

▬ To prevail under a quid pro quo theory, a plaintiff must assert and prove: 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for

previously held that individual liability does not exist under Title VII. *See, Czupih v. Card Pak Inc.*, 916 F.Supp. 687, 691 (N.D.Ohio 1996). Accordingly, summary judgment is GRANTED on Plaintiff's claims of harassment brought against Defendant Chambers in his individual capacity. As such, this Court will continue with its analysis of the motion in regard to Defendant Chambers in his official capacity.

sexual favors; 3) that the harassment complained of was based on sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability. *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir.1992); (quoting, *Highlander v. KFC Nat'l Management Co.*, 805 F.2d 644, 648 (6th Cir.1986)). For purposes of summary judgment, the existence of the first three elements cannot be argued. Plaintiff is a black female who alleges that she was verbally and physically harassed as a result of her sex. However, plaintiff fails to present a genuine issue of material fact on the fourth element.

The Sixth Circuit has stated that under *quid pro quo* harassment a job detriment could be non-economic as well as economic in nature. *Kauffman*, at 187 (remanding on basis that a transfer to a different machine, while not economically detrimental, could be non-economically detrimental). Plaintiff contends that the job detriment she experienced was the extension of her 90–day probationary period.

In the present case, nowhere within the evidence presented to this Court has Plaintiff shown a job detriment, either non-economic or economic, as a result of the alleged harassment. The evidence presented clearly shows that the extension of Plaintiff's probationary period was a result of her initial failure of the state firearm proficiency test. Plaintiff has presented no evidence to refute this legitimate non-discriminatory reason for her probationary extension. Nor has Plaintiff shown any job detriment in any other form. On the contrary, Defendant has presented evidence that Plaintiff has continued to advance in her department and career. Therefore, as a matter of law Defendant's Motion for Summary Judgment is GRANTED on Plaintiff's *quid pro quo* theory of harassment.

#### B. *Hostile work environment*

Plaintiff's complaint sets forth allegations of a hostile work environment based upon sex and race discrimination. The elements and burdens upon the Plaintiff are the same regardless of the discrimination context in which the claim arises. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir.1996); *Risinger v. Ohio Bur. of Workers' Compensation*, 883 F.2d 475 (6th Cir.1989).

■ To prevail in a claim of "hostile work environment" sexual harassment, the Plaintiff must assert and prove that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the Plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and (5) the existence of respondeat superior. *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir.1996); *Kauffman, supra*. The existence of the first three elements of this test has already been discussed by this Court in regard to Plaintiff's *quid pro quo* claim of harassment. *Supra*. Therefore, the Court's analysis will be limited to the fourth and fifth elements.

■ For the Plaintiff to satisfy the fourth element of her hostile work environment claim, she must present evidence that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). "A party seeking summary judgment bears the initial burdens of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994). "Whether harassment is sufficiently severe or pervasive to create an abusive work environment is 'quintessentially

a question of fact.'" *Crawford,* 96 F.3d at 835; (quoting *Amirmokri v. Baltimore Gas & Elec. Co.,* 60 F.3d 1126, 1130–31 (4th Cir. 1995)). Whether an environment is hostile or abusive can be determined by looking at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. at 371. Furthermore, the actions complained of must have "created an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Scott v. Central School Supply,* 913 F.Supp. 522, 529 (E.D.Ky.1996) (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. at 370).

The Plaintiff has presented evidence that she was continuously propositioned and exposed to various unwelcomed comments and touching in regard to both her sex and race. The evidence presented shows that these incidents were not random or isolated but continued over an extended period of time. Moreover, the alleged initiator of these incidents was the supervisor of Plaintiff, Defendant Chambers. In *Pierce, supra,* the Sixth Circuit held, at 803, that:

> In supervisor sexual harassment cases, an individual who is acting as an employer's "agent" is deemed the alter ego of the employer and the employer is liable for his unlawful employment practices without regard to whether the employer actually knew (or should have known) of the individuals conduct.

Upon an allegation of supervisory sexual harassment, an employer can negate its liability if it responds adequately and effectively. *Id.,* at 803; *see also, Fleenor,* 81 F.3d at 50. In the present case, Plaintiff brought an EEOC charge as early as January, 1993. This charge was clearly premised upon race and sex. Plaintiff has set forth evidence of harassment by Defendant Chambers that continues well into 1994.[3]

Construing the evidence in a light most favorable to the Plaintiff there remains a genuine issue to be resolved by the trier of fact whether Plaintiff's workplace was so permeated with discriminatory intimidation, ridicule and insult so as to "alter the conditions of plaintiff's employment" and "create an abusive working environment." Therefore, genuine issues of material fact exist as to whether the actions complained of amounted to Plaintiff being subjected to a hostile work environment on the basis of race and sex.

Accordingly, Defendant's Motion for Summary Judgment is **DENIED** as it pertains to Plaintiff's allegations of the creation of a hostile work environment on the basis of race and sex in violation of Title VII and OHIO REV.CODE ANN. § 4112.

### V.

Therefore, Defendant's Motion for Summary Judgment (Doc. # 39) on Plaintiff's Count One and Two is GRANTED as it pertains to Plaintiff's claims of quid pro quo harassment and DENIED as it pertains to Plaintiff's claims of being subjected to a hostile work environment on the basis of race and sex. Defendant's Motion for Summary Judgment (Doc. # 39) is GRANTED on Count Three and Four of Plaintiff's Complaint.

IT IS SO ORDERED.

---

**3.** Neither the complaint, nor Plaintiff's response motion, state any actions undertaken by Lieutenant Haynes that are in any manner inappropriate and actionable. Furthermore, Plaintiff has presented no evidence to support any allegations against Lieutenant Haynes. Therefore, summary judgment is **GRANTED** in regard to all actions against Lieutenant Haynes.