Mary Ann Galmish appeals the order of the Stark County Court of Common Pleas awarding summary judgment to Developers Diversified Realty Corporation ("DDRC") on her civil conspiracy claim. We affirm.
Mary Ann Galmish and her husband Joseph were the owners of real property located at 5560 Dressler Road, N.W., Canton (the "property"), which Mrs. Galmish had acquired from Guy Cicchini, her ex-husband, pursuant to their divorce. On September 20, 1993, the Galmishes and DDRC entered into a written agreement in which the Galmishes agreed to sell and DDRC agreed to buy the property for $765,000, conditioned upon DDRC's acquisition of title to an adjacent property on or before November 15, 1993. When DDRC was unable to acquire the adjacent property by the closing date, the parties amended their agreement to give DDRC the right to extend the closing date in one-month intervals until March 15, 1994, upon payment of a monthly fee to the Galmishes. When DDRC was unable to obtain title to the adjacent property by March 15, 1994, the Galmishes demanded that DDRC increase its monthly fee to hold the property. DDRC refused.
The Galmishes then entered into an agreement with Cicchini on May 27, 1994, pursuant to which the Galmishes agreed to convey title to the property to Cicchini for 765,000 ("Galmish-Cicchini contract"). The agreement contained a provision whereby Cicchini agreed to pay the Galmishes one half of any net proceeds over and above the sum of $765,000 ("proceeds") if Cicchini sold, transferred or conveyed the property to DDRC within one year of the execution of the agreement. Cicchini acquired title to the property on May 31, 1994.
On August 30, 1994, DDRC sent a written offer to Cicchini to purchase the property for 5765,000. Cicchini rejected the offer. On October 6, 1994, DDRC sent another letter, offering $825,000 for the property. Cicchini again rejected. On January 27, 1995, DDRC offered to purchase the property for $1,480,000. The initial draft of agreement between Cicchini and DDRC had a proposed closing date of April 15, 1995. An amended agreement between the parties set the closing date for June 2, 1995.
DDRC sent execution copies of the proposed purchase agreement to Cicchini, along with closing documents, on February 17, 1995. Cicchini did not return an executed copy of the agreement. On June 12, 1995, Cicchini informed DDRC that he would not convey the property to DDRC for $1,480,000, but that he would sell the property solely on a land exchange basis. DDRC rejected the land exchange offer. Cicchini then proposed a cash purchase price of $1,750,000, which DDRC accepted. Title to the property transferred to DDRC on June 19, 1995. Cicchini refused to pay proceeds to the Galmishes.
Mrs. Galmish[1] brought an action against Cicchini, claiming breach of contract, breach of good faith, fraudulent inducement, and civil conspiracy. Mrs. Galmish also named DDRC as a defendant, alleging that DDRC conspired with Cicchini, and interfered with the Galmish-Cicchini contract in order to deprive her of proceeds from Cicchini's sale of the property to DDRC.
DDRC filed a cross-claim against Cicchini alleging fraud, detrimental reliance, breach of contract, breach of license agreement, and interference with business relations. It also sought indemnity for its costs in defending the Galmish lawsuit. The trial court granted Cicchini's motion for summary judgment on DDRC's cross-claim. That decision was affirmed on appeal. Developers Diversified Realty Corp. v. Cicchini (Sept. 30, 1996), Stark App. No. 1996CA00007, unreported.
Both Cicchini and DDRC filed motions for summary judgment on the claims asserted by Mrs. Galmish. The trial court denied Cicchini's motion for summary judgment, but granted DDRC's motion.[2] Mrs. Galmish filed a timely notice of appeal of the trial court's award of summary judgment to DDRC and asserts a single assignment of error.
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTING DDRC'S MOTION FOR SUMMARY JUDGMENT IN THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT THAT DDRC COMMITTED A CIVIL CONSPIRACY.
In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. Perkins v. Lavin (1994), 98 Ohio App.3d 378, 381. Pursuant to Civ.R. 56(C), summary judgment is not proper unless
 (1) no genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.
State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. All doubts are to be resolved in favor of the nonmoving party.Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686.
A defendant moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact on an essential element of the plaintiff's claim. Vahila v. Hall (1997), 77 Ohio St.3d 421,429. If the defendant meets its burden, the plaintiff must respond by demonstrating that there are genuine issues of material fact to be tried. Id.
A civil conspiracy claim brought in Ohio consists of " 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' " Kenty v. Transamerica PremiumIns. Co. (1995), 72 Ohio St.3d 415, 419, quoting LeFort v.Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 126;Minarik v. Nagy (1963), 8 Ohio App.2d 194, 196. A civil conspiracy claim also requires an underlying unlawful act.Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475. " '[I]f one person could lawfully commit an act, then that act committed by two or more persons cannot support a conspiracy claim, no matter how malicious the 'conspirators,' or how great the resulting 'injury.' " Gosden v. Louis (Dec. 4, 1996), Summit App. No. 17609, unreported, at 32, citing Palmer v.Westmeyer (1988), 48 Ohio App.3d 296, 301. "[I]n the civil conspiracy context, an otherwise lawful act is not made unlawful merely because two or more persons have joined together to commit it in hopes of causing injury to the plaintiff, even if they succeed." Id.
The underlying unlawful act alleged by Mrs. Galmish was tortious interference by DDRC with the Galmish-Cicchini contract. In order to establish a claim of intentional interference with a contract, a plaintiff must prove: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of and (5) resulting damages."Kenty, 72 Ohio St.3d 415, at paragraph two of the syllabus.
DDRC included with its motion for summary judgment various affidavits, deposition testimony, and a copy of the Galmish-Cicchini contract.[3] The agreement provided, in pertinent part:
 2. Purchase Price and Deposit. (a) [sic] Purchaser agrees to pay to Sellers as the purchase price for the Property ("Purchase Price") Seven Hundred Sixty-Five Thousand Dollars ($765,000.00) which shall be paid in cash, by means of a certified check made payable to Sellers, or by money transfer to the account of the Sellers.
* * *
 11. Transfer Within One Year. Purchaser agrees to pay to Sellers one-half (1/2) of all net proceeds over and above Seven Hundred Sixty-five Thousand and no/100 Dollars ($765,000.00) which Purchaser or Purchaser's agents receive as compensation if said property is sold, transferred or conveyed to Developers Diversified, Inc. or its agents, representatives, or assigns within one (1) year of the execution of this Agreement. Purchaser and Sellers acknowledge that this paragraph shall survive the closing of this transaction.
* * *
 17. Prior Agreement. This Agreement represents the entire and sole agreement between the parties pertaining to the sale of the Property, and the parties hereby mutually withdraw, cancel, waive, terminate, and exclude any and all oral or written representations, discussions, or agreements made prior to or contemporaneously with the execution of this Agreement. Furthermore, the terms of this Agreement shall not be waived or modified without the express written consent of both parties.
When parties to an agreement, after negotiations, "make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions." AultmanHosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,53. Intentions that may have been present during negotiations but are "not expressed in the writing are deemed to have no existence and may not be shown by parol evidence."Id. A court cannot imply a covenant into a contract "in relation to any matter that is specifically covered by the written terms of the contract." Id. at 53-54.
The Galmish-Cicchini contract provided only for the sale of the property. It set a sales price for that purchase of $765,000. Paragraph 11 stated only that, if Cicchini sold the property, to DDRC within one year of execution, he would pay the Galmishes 50 percent of the net proceeds of that sale in excess of 765,000. Cicchini was not obligated by the contract to pay proceeds to the Galmishes as part of the purchase price for the property. He was not obligated by the contract to sell the property to DDRC within one year or to act as the Galmishes' agent in reselling the property. If there was a different understanding between the Galmishes and Cicchini regarding the circumstances under which proceeds would be paid, they did not reflect that understanding in their contract despite the fact that both were represented by counsel. Since the written agreement was unambiguous, and since the integration clause states that the written agreement was the complete understanding of the parties, parol evidence cannot be used now to rewrite the contract retroactively.
Since the written agreement contains no obligation on Cicchini's part to sell the property to DDRC within one year or to pay proceeds to the Galmishes after one year, Cicchini did not breach his contract with the Galmishes. In the absence of a breach of contract by Cicchini, Mrs. Galmish, as a matter of law, cannot establish the underlying tort necessary to her civil conspiracy claim. See Bryans v. English Nanny GovernessSchool, Inc. (1996), 117 Ohio App.3d 303, 318. In order to establish that a defendant has tortiously interfered with a contract, there must be a contract, in full force and effect, that includes the particular covenant alleged to have been breached. See 4 Restatement of the Law 2d, Torts (1979) 10, Section 766, Comment f. Since the contract between the Galmishes and Cicchini failed to establish a duty by Cicchini to complete a sale to DDRC by May 27, 1995, and to pay proceeds to the Galmishes, the trial court did not err in granting summary judgment to DDRC on Mrs. Galmish's civil conspiracy claim.
Mrs. Galmish's assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Stark, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ------------------------- WILLIAM R. BAIRD FOR THE COURT
SLABY, J., QUILLIN, J., CONCUR
[1] Joseph Galmish was also a plaintiff in the original complaint. He was later dismissed, and Mary Ann Galmish continued as the sole plaintiff.
[2] Mrs. Galmish's case against Cicchini proceeded to trial. A jury rendered a verdict against Cicchini and awarded both actual and punitive damages. Cicchini's appeal of that decision is decided in a separate opinion of this court.
[3] Mrs. Galmish also attached a copy of the Galmish-Cicchini contract to her complaint.