In this wrongful discharge case, plaintiff-appellant Nancy Arsham-Brenner (hereafter "appellant") asks that we overturn a summary judgment order rendered in favor of defendants-appellees Grande Pointe Health Care Community; Care Services, Inc.; Karen Fogel; and Warren L. Wolfson (hereafter collectively referred to as "appellees"). Appellant maintains that factual questions entitle her to trial on claims that her discharge was actionable under Ohio's "Whistleblower" Statute (R.C. 4113.52), was retaliatory in violation of R.C. 3721.24, and was independently actionable as being against Ohio public policy; and that she was defamed by the appellees. Our review convinces us that the appellees were entitled to judgment as a matter of law. Accordingly, the judgment is affirmed.
We learn from the record that appellee Grande Pointe Health Care Community is the name by which Richmond Nursing, Inc., does business.[1] Grande Pointe operates a licensed skilled residential and assisted living healthcare facility in Richmond Heights, Ohio, specializing in senior citizen care. Appellee Care Services, Inc., is a holding company that provides management and support services to Grande Pointe. At all relevant times, Grande Pointe's chief executive officer was appellee Warren Wolfson and its administrator was appellee Karen Fogel.
Fogel hired appellant Nancy Arsham-Brenner as Director of Nursing on January 29, 1996, and was appellant's immediate supervisor for the duration of appellant's employment. Fogel terminated appellant's employment on April 3, 1996. Fogel averred that she terminated appellant's employment because of chronic absenteeism: appellant was absent approximately sixteen and one-half days in January and February 1996. Fogel also cited appellant's lack of team work as grounds for appellant's termination. Fogel noted that she had occasion to reprimand appellant on several occasions for appellant's work performance at Grande Pointe.
Appellant, for her part, offered a different perspective. She says she observed a variety of substandard office practices that she reported to her supervisor, including the fact that a non-nurse was supervising nursing personnel. Appellant reportedly discovered numerous other substandard practices which were not adequately addressed. She alleges that she spoke with representatives of the Ohio Department of Health about the conditions at Grande Pointe, although she kept no record of those contacts.
Appellee Wolfson averred that he was never informed by the Ohio Department of Health, or any other entity, that appellant had filed a complaint or report with any such entity regarding Grande Pointe. He added that he first learned that appellant had filed a complaint or report concerning Grande Pointe when this lawsuit was filed. Appellee Fogel similarly averred that she never learned from any source that appellant had filed a report or complaint concerning Grande Pointe until this lawsuit was filed.
The appellees further offered evidence by affidavit from Michelle DeLong, the records custodian responsible for all complaints filed with the Ohio Department of Health that allege safety ordinance and/or regulatory violations against skilled nursing health-care facilities in Ohio. A search of the computer database on which records of complaints are stored disclosed "no complaint of any sort signed by Nancy Arsham-Brenner with the Ohio Department of Health alleging the violation of any safety ordinance and/or regulation on the part of Grande Pointe Health Care Community."
Appellant filed this action against the appellees on August 19, 1996. After a period allowed for discovery and motion practice, the trial court granted the appellees' motion for summary judgment on June 3, 1998. Appellant argues that the court erred in granting summary judgment as to certain claims.
Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. To obtain a summary judgment under Civ.R. 56(C), the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment.Vahila v. Hall (1997), 77 Ohio St.3d 421, 430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C). See Leev. Sunnyside Honda (1998), 128 Ohio App.3d 657, 660; N. Coast CableL.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440.
We additionally note that Civ.R. 56(C) is particular in identifying the documents that may be considered in summary judgment motion practice. They include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action * * *.[2] In the case before us, both parties' filings below and here refer to deposition transcripts that were not filed and/or to exhibits that are not within the scope of that which Civ.R. 56(C) allows. Because summary judgment "must be awarded with caution," see Norris v. OhioStd. Oil Co. (1982), 70 Ohio St.2d 1, 2, we consider only those factual assertions supported in accordance with Civ.R. 56(C).
For this wrongful discharge case, appellant does not contend that her employment was based on contract, either express or implied. It follows that appellant's employment was at-will. As a general rule, at-will employment may be terminated by either employer or employee at any time for any or no reason. See Fawcettv. G.C. Murphy Co. (1976), 46 Ohio St.2d 245. An employer may not, however, discharge an employee where the discharge violates "clear public policy" established by the Constitution and statutes of the United States, the Constitution and statutes of Ohio, administrative rules and regulations, and/or the common law. Kulchv. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134; Collins v.Rizkana (1995), 73 Ohio St.3d 65; Painter v. Graley (1994)70 St.3d 377; Greeley v. Miami Valley Maintenance Contractors, Inc.
(1990), 49 Ohio St.3d 228.
With these rules as our guide, we turn to appellant's first assignment of error, which reads:
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT REGARDING APPELLANT'S CLAIM UNDER THE STATE WHISTLEBLOWER STATUTE, O.R.C. 4113.
This assignment of error is not well taken.
Appellant contends her discharge violated Ohio's whistleblower statute, R.C. 4113.52.[3] She asserts her claim under R.C.4113.52(A)(1), which provides:
 (a) If an employee becomes aware in the course of his employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that his employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within his jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade or business in which he is engaged. (b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.
R.C. 4113.52(B) states, in relevant part:
 Except as other provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division.
Under that section, disciplinary or retaliatory action includes removing the employee from employment. R.C. 4113.52(B)(1).
"In order for an employee to be afforded protection as a `whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." Contrerasv. Ferro Corp. (1995), 73 Ohio St.3d 244, syllabus. In Contreras, the employee did not comply with R.C. 4113.52(A)(1)(a), because he did not orally notify his superior or other responsible officer of the corporation of the illegal inventory diversion, and because he did not provide his employer with a written report of the criminal activity until after he revealed his suspicions to outsiders, thereby denying his employer the opportunity to correct the illegal inventory diversion. Similarly, in Kulch v. Structural Fibers,Inc. (1997), 78 Ohio St.3d 134, the employee did not comply with R.C. 4113.52(A)(1)(a) because he did not provide his employer with a written report describing the alleged OSHA violations before he reported the suspected violations to OSHA. Kulch,78 Ohio St.3d at 140-142.[4] See also Haney v. Chrylser Corp. (1997), 121 Ohio App.3d 137
(employee did not comply with R.C. 4113.52(A)(1), because written report was not filed with appropriate supervisor or other responsible officer, lacked sufficient detail to identify and describe specific safety violation, and was unrelated to previous oral report); Thatcher v. Goodwill Industries of Akron (1997),117 Ohio App.3d 525 (employee's "exit interview documents" failed to provide sufficient detail to identify and describe violation as required for written report).
In the case at hand, appellees contend that appellant did not comply with R.C. 4113.52(A)(1) because (1) she did not give them a written report providing sufficient detail to identify and describe any violations, and (2) she did not file a written report with the Ohio Department of Health providing sufficient detail to identify and describe any violations. Appellant's response identified five subjects about which she registered complaints, but her response did not set forth facts that created material factual disputes.
In particular, appellant first says she complained to her supervisors that Grande Pointe residents' files lacked advance directives that state the residents' wishes if faced with a life-threatening illness. Appellant insisted that she handwrote several notes to Fogel about it, but she admits she kept no copies and therefore cannot show that her written report provided her employer with "sufficient detail to identify and describe the violation" as R.C. 4113.52(A)(1)(a) requires. She similarly claims to have written to the Ohio Department of Health about a lack of advance directives in residents' files, but she kept no copy of any such report and therefore cannot show that any such report to the Ohio Department of Health contained "sufficient detail to identify and describe the violation" as R.C. 4113.52(A)(1)(a) requires.
Appellant secondly states that she orally complained to her supervisor that patient and employee files were incomplete. Appellant did not file written reports with either her employer or the Ohio Department of Health memorializing these complaints, so she did not comply with R.C. 4113.52(A)(1)(a) on this subject.
Appellant next says that she repeatedly complained to her supervisor that Grande Pointe lacked resident patient assessments and multi-data systems information and ultimately wrote to the Department of Health about this. Appellant did not file a written report with her employer on this matter. She also did not keep a copy of her correspondence to the Department of Health, so she again cannot show any report containing sufficient detail to identify and describe the violation as R.C. 4113.52(A)(1)(a) demands.
Appellant's fourth contention is that she complained that it was a violation of the Nurse Practices Act for a non-nurse to be supervising other nurses. There is no documentary evidence appellant filed a written report with her employer on this matter. She states that she sent a letter to the Department of Health on this subject but, again, retained no copy.
Appellant lastly says the letter she wrote to the Ohio Department of Health also reported that the facility lacked bed rail assessments. There is no documentary evidence that appellant made an oral or written report to her supervisor on this subject, and she, again, has no copy of her letter to the Department of Health.
Appellant does not dispute the testimony from the Department of Health records custodian stating that the Department of Health had no record of any "complaint of any sort signed by Nancy Arsham-Brenner with the Ohio Department of Health alleging the violation of any safety ordinance and/or regulation on the part of Grande Pointe Health Care Community". Appellant speculates that her correspondence to the Ohio Department of Health "could have been intercepted" through the Grande Pointe mailing system. Appellant offers no facts in support and, in any event, still cannot show that her correspondence contained "sufficient detail to identify and describe the violation" as R.C. 4113.52(A(1)(a) requires.
Appellant's failure to comply strictly with the dictates of R.C. 4113.52 prevents her from claiming that statute's protection. See Contreras v. Ferro Corp., supra; Kulch v. Structural Fibers,Inc., supra. The appellees additionally contend that appellant could not recover under R.C. 4113.52 because of lack of causation. Specifically, the appellees' evidence showed that they were unaware that appellant made any R.C. 4113.52(A)(1) reports while she was employed at Grande Pointe. Appellant therefore could not show that the appellees took any disciplinary or retaliatory action against her because she made a R.C. 4113.52(A)(1) report or because she made any inquiry or took any other action to ensure the accuracy of any information reported under that division, as R.C. 4113.52(B) requires. In Thomas v. Mastership Corp. (1995), 108 Ohio App.3d 91, we affirmed a summary judgment that denied a retaliatory discharge claim in part because the evidence showed the employer did not know about the Internal Revenue Service's adverse determination until after the employee was terminated.
In the case at bar, appellant concedes that she did not tell her supervisor about any communications with the Ohio Department of Health:
 Q. Did you provide copies of these reports to Karen Fogel?
A. Oh, no, absolutely not.
Q. Why not?
 A. Because I had been promised repeatedly by Karen Fogel that these problems were going to be resolved. And not only were they not resolved, but they were continuing and patients were at harm and being continually in the position of being harmed. And she had also been screaming and yelling at me inappropriately. So no, I most certainly did not give her a copy. I had no confidence that she would do anything different. I worked for her many weeks and she had done nothing.
(Arsham 12/22/97 Depo. at 17.) With no evidence to show appellees were aware of appellant's statements to the Department of Health prior to her termination, appellant's evidence does not establish any factual dispute to show that her statements to the Department of Health caused the appellees to retaliate against her.
Because the undisputed facts established that appellant did not comply strictly with R.C. 4113.52(A)(1)(a) and her discharge was not shown in any event to be in retaliation for any report or inquiry under that section, the trial court correctly granted the appellees' motion for summary judgment against appellant on her "whistleblower" statute claim. The first assignment of error is accordingly overruled.
Appellant's second assignment of error states:
 II. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT REGARDING APPELLANT'S CLAIM UNDER THE NURSING HOME ANTI-RETALIATION STATUTE, O.R.C. 3721.24.
This assignment of error is not well taken.
Appellant alternatively argues that her discharge violated the Ohio statute proscribing retaliation for reporting nursing home resident abuse or neglect. R.C. 3721.22(A) states:
 No licensed health professional who knows or suspects that a resident has been abused or neglected, or that a resident's property has been misappropriated, by any individual used by a long-term care facility or residential care facility to provide services to residents, shall fail to report that knowledge or suspicion to the director of health.
Under R.C. 3721.21(C),
"Abuse" means knowingly causing physical harm or recklessly causing serious physical harm to a resident by physical contact with the resident or by use of physical or chemical restraint, medication, or isolation as punishment, for staff convenience, excessively, as a substitute or treatment, or in amounts that preclude habilitation and treatment.
Under R.C. 3721.21(D),
"Neglect" means recklessly failing to provide a resident with any treatment, care, goods, or service necessary to maintain the health or safety of the resident when the failure results in serious physical harm to the resident.
Appellant contends her discharge was retaliatory in violation of R.C. 3721.24(A), which provides:
 No person or government entity shall retaliate against an employee or another individual used by the person or government entity to perform any work or services who, in good faith, makes a report of suspected abuse or neglect of a resident or misappropriation of the property of a resident; indicates an intention to make such a report; provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health; or participates in a hearing conducted under section 3721.23 of the Revised Code or in any other administrative or judicial proceedings pertaining to the suspected abuse, neglect, or misappropriation. For purposes of this division, retaliatory actions include discharging, demoting, or transferring the employee or other person, preparing a negative work performance evaluation of the employee or other person, reducing the benefits, pay, or work privileges of the employee or other person, and any other action intended to retaliate against the employee or other person.
The appellees maintain that R.C. 3721.24(A) provided appellant with no right to relief here because she did not file any reports of suspected resident abuse or neglect with the Ohio Department of Health and because the appellees were unaware of any such complaint or report by appellant. For her part, appellant first contends that R.C. 3721.24(A) does not specify to whom the report of suspected resident abuse or neglect must be made, so that reports she made to her employer are sufficient. We cannot agree.
Under R.C. 3721.22(A), a licensed health professional is obliged to report suspected abuse or neglect "to the director of health". Sections B and C describe voluntary reporting to the "director of health". The intervening statute, R.C. 3721.23, refers to the duties of the director of health to investigate allegations. Reading these statutes together, we believe that R.C.3721.24 forbids retaliation for reports, whether obligatory or voluntary, made only to the director of health pursuant to R.C.3721.22. Any reports to others, such as to appellant's employer, of suspected resident abuse or neglect do not qualify for protection under R.C. 3721.24(A).
Appellant alternatively argues that she did report her concerns to the Department of Health and assisted in the Department's investigations of the deaths of residents Helen Brown and Edward Guy. Appellant does not dispute that the Department's investigations of these matters arose from complaints made on December 14, 1995 and January 4, 1996, and thus pre-dated appellant's January 29, 1996 hiring. She alleges that Department of Health surveyors spoke with her about these matters on February 29, 1996 and on March 6, 1996. She insists that her statements to representatives from the Department of Health led to her discharge on April 3, 1996.
For their evidence offered in support of their motion for summary judgment, the appellees denied knowing that appellant had made any complaints or reports to the Department of Health while she was employed at Grande Pointe. Appellant did not submit any evidence to contest that fact. Because she did not dispute that the appellees lacked knowledge of her statements to the Department of Health, appellant could not show the appellees discharged her in retaliation for those statements. See Thomas v. Mastership Corp.,supra.
Moreover, as legitimate non-retaliatory reasons for the termination of her employment, the appellees identified appellant's "chronic absenteeism and her lack of team work, which created division among the staff". Appellant did not submit any evidence to contest these facts.[5] She likewise presented no evidence to show that the stated reasons for her termination were mere pretext.
Appellant did not submit evidence establishing a triable factual question to show that her discharge was retaliatory in violation of R.C. 3721.24(A). The trial court correctly granted summary judgment on that claim. We therefore overrule appellant's second assignment of error.
Appellant's third assignment of error states:
 III. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT REGARDING APPELLANT'S CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY.
Appellant argues that her discharge in violation of clear public policy permits her to maintain a common-law cause of action in tort. This assignment of error is not well taken.
When an at-will employee's discharge violates clear public policy, the employee's remedies are cumulative and she may pursue those remedies that the law itself provides for the violation or those that are available in a common-law cause of action in tort, but she is not entitled to double recovery. Kulch v. StructuralFibers, Inc., supra; Greeley v. Miami Valley Maintenance Contrs.,Inc., supra. Conversely, when the employee's discharge is not actionable under the law that establishes the "clear public policy", the companion common-law claim for relief likewise fails as a matter of law. In Kulch, supra, the court held that because Kulch did not strictly comply with the requirements of R.C.4113.52(A)(1)(a) in reporting his employer, he had no foundation for a Greeley claim based on the public policy embodied in R.C.4113.52 * * *. Id., 78 Ohio St.3d at 154. By contrast, Kulch's distinctly valid claim under R.C. 4113.52(A)(2) allowed him to seek the relief provided by R.C. 4113.52 and additionally furnished a second and independent foundation for a Greeley claim premised upon the clear public policy embodied in R.C. 4113.52. Id.
In the case at bar, however, we have already determined that appellant failed to establish grounds for relief under either R.C.4113.52 or R.C. 3721.24. Appellant does not identify any other source of "clear public policy" to sustain her wrongful discharge claim. It follows that the absence of any foundation for relief under those statutes forecloses her from pursuing relief by a common-law tort claim. We must therefore overrule her third assignment of error.
Appellant's fourth assignment of error states:
 IV. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S DEFAMATION CLAIM.
This assignment of error is not well taken.
Appellant contends that she was defamed when appellee Fogel told her during an office meeting with other employees that "I'm not worth the salary that I'm already being paid." On another occasion, appellee Fogel yelled across a hallway, in front of staff members, residents and residents' family members, "You are nothing but trouble!" The appellees contend that these statements are not actionable because they were statements of opinion, not fact, and were necessarily not false. The appellees further contend that the statements were subject to a qualified privilege in any event. We conclude that the statements cited by appellant were not actionable here.
Defamation is a false publication causing injury to a person's reputation or exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in the person's trade or business. See Bryans v. English Nanny Gov.School (1996), 117 Ohio App.3d 303, 316. While false statements of fact may be actionable, statements of opinion are not, because of the First Amendment. See Gertz v. Robert Welch, Inc. (1974),418 U.S. 323. In Vail v. The Plain Dealer Publishing Co. (1995), the court's syllabus states:
 When determining whether speech is protected opinion a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. [Citations omitted.]
In the instant case, we think it inescapable that the statements appellant attributes to appellee Fogel were protected statements of opinion. They cannot be shown to be demonstrably false. As the appellees correctly point out, "[t]he language used by [Fogel] is value-laden and represents a point of view that is obviously subjective." Vail v. The Plain Dealer Publishing Co.,supra, 72 Ohio St.3d at 283.
Appellant does not dispute that Fogel's statements lack a plausible method of verification. When a statement lacks a plausible method of verification, a reasonable person will not believe that the statement has specific factual content. Vail,supra, 72 Ohio St.3d at 283. We conclude that the statements cited by appellant are not actionable as a matter of law. It is therefore unnecessary for us to consider the appellees' alternative contention that the statements are subject to a qualified privilege unless shown to have been made with actual malice. See Hahn v.Kotten (1975), 43 Ohio St.2d 237. The fourth assignment of error is overruled.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ DIANE KARPINSKI, JUDGE
TERRENCE O'DONNELL, P.J., and TIMOTHY E. McMONAGLE, J., CONCUR.
[1] Richmond Nursing, Inc., was not named as a party-defendant, but its absence does not appear material.
[2] At the time this case was pending below, Civ.R. 56(C) allowed transcripts of evidence in the pending case. A 1999 amendment deleted that restriction.
[3] Appellant's claim is governed by that version of R.C. 4113.52
amended by Am.Sub.H.B. 588, effective October 31, 1990. We note that R.C. 4113.52 was subsequently amended by Am.Sub.H.B. 350, which, by Section 6 of that act, applied only to civil actions based on tortious conduct commenced on or after the January 27, 1997 effective date of the act. While the Supreme Court of Ohio recently declared Am.Sub.H.B. 350 unconstitutional in toto, seeState ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999),86 Ohio St.3d 451, that act would not have applied here in any event because of Section 6.
[4] While Kulch's failure to give his employer a written report was fatal to his claim under R.C. 4113.52(A)(1), his claim under R.C. 4113.52(A)(2) survived because that section did not require the employee to inform the employer, either orally or in writing, concerning violations of the type described in R.C. 4113.52(A)(2). See Kulch, 78 Ohio St.3d at 143-148. Appellant does not rely on R.C. 4113.52(A)(2) here and her claim does not appear to involve any of the matters within the scope of that section.
[5] While appellant notes that there were no records reflecting that she had been disciplined or otherwise memorializing her supervisor's concerns about appellant's work performance, she offered no evidence to dispute appellees' evidence that she was absent "approximately sixteen and one-half days in January and February 1996."